INTERNATIONAL WATCH COMPANY, PLAINTIFF-APPEL-
LEE, v. DELAWARE, LACKAWANNA AND WESTERN
RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued November 4, 1909—Decided November 17, 1910.

A railroad company engaged in interstate commerce, which receives
goods to be transported from a point in this state to a point in
another state, is liable by force of section 20 of the Interstate
Commerce act of 1906 for a loss of the property caused by it or
any connecting carrier, although the receiving company failed to
issue a receipt or bill of lading therefor.

On appeal from judgment of the First District Court of
Jersey City.

Before Justices REED, BERGEN and MINTURN.

For the plaintiff, appellee, *Sidney W. Eldridge.*

For the defendant, appellant, *Frederic B. Scott.*

The opinion of the court was delivered by

REED, J. This action was brought to recover the value of
four hundred and one watches claimed to have been delivered
by the International Watch Company to the Delaware, Lacka-
wanna and Western Railroad Company, to be carried from
Hoboken, New Jersey, to Portland, Oregon, which watches
were lost to the plaintiff in transit. No testimony was offered
by the defendant. At the close of the plaintiff's case a nonsuit
was moved and denied, and a verdict was directed by the trial
court in favor of the plaintiff. There was an exception to the
refusal of the court to nonsuit. There was no objection en-
tered to the direction of a verdict for the plaintiff.

The nonsuit was moved for on several grounds. The prin-
cipal ground argued on this appeal is that there was not ade-
quate proof that the watches in question were delivered by the

International Watch Company to the Delaware, Lackawanna and Western Railroad Company.

The plaintiff's state of demand sets out that the plaintiff delivered on January 2d, 1908, to the defendant, two crates, each of which contained five boxes containing in all five hundred (500) clock watches, to be conveyed from Hoboken, New Jersey, to Portland, Oregon. It was not, however, admitted that the defendant received the two crates from the plaintiff, but it left that to be proved.

The testimony shows that five hundred watches were packed in the factory of the plaintiff, fifty boxes each containing one watch were packed in a wooden box, and five of these wooden boxes were packed in a crate, and there were two crates of these wooden boxes, each box wired and sealed at the end. On the dial of each watch was the name H. S. Tuttle. These wooden boxes were sealed, and were so crated that the seals were visible. These crates were made up in the presence of witnesses employed by the complainant, and were delivered to the Dodd, Childs Express Company on December 31st, 1907, the day they were packed. They were received by one Tulles, an employe of the Dodd, Childs Express Company, and were carried by him to the Monticello Avenue station of the express company, and on that same day were taken to the First Street station of the express company. The evidence is clear that Herman Hardy received these goods on the morning of January 2d, 1908, at the First Street station platform and delivered them to the defendant that same morning.

The evidence of the transportation of these goods from the plaintiff's factory into the possession of the defendant was such that the court had a right to assume it as proved; at any rate there was no such defect in proof as to justify a nonsuit. The same may also be said of the evidence that the goods were received in the condition in which they left the factory of the plaintiff, with the seals unbroken and the contents undisturbed.

If shipped, the loss of four hundred and one of these watches is admitted; for it is stipulated that upon the crates being opened, that number of watches were missing, and bricks wrapped in paper were substituted. It is stipulated that the

defending company are engaged in interstate commerce; that the crates were carried by it from Hoboken to Black Rock, and were there turned over to the Wabash Railroad Company, the next connecting carrier, and that the cars, with seals numbered C29928 and C29929, were turned over to the Wabash Railroad Company on January 4th, 1909, the car seals being intact.

It is insisted that there was no damage proved, but an officer of the International Watch Company testified that each watch was worth fifty cents, and his testimony was competent.

It is again insisted that the suit for the loss of these watches should not have been brought by the International Watch Company. But the International Watch Company was the consignor who, so far as appears, selected the common carrier to make the delivery of these goods; and there is nothing to show the transfer of title to the consignee.

It is again insisted that the crates containing the boxes in question were turned over by the Delaware, Lackawanna and Western Railroad Company to the Wabash Railroad Company, the next connecting carrier, in good condition, and that the seals of the boxes were broken when received by the consignee at Portland, Oregon, a point far beyond the termination of the appellant's route.

It is also insisted that the rule is that the last of a line of connection carriers is presumed, in the absence of proof to the contrary, to have received the freight in the same condition it was delivered to the initial carrier; and it being proved that it was received by the defendant in good order, the presumption is that the injury resulted from the negligence of the last carrier.

Aside from the question last propounded, the question supervenes whether, it being admitted that the defendant was engaged in interstate commerce in the transportation of the crates in question, its liability is not controlled by section 20 of the Interstate Commerce act, as amended on June 29th, 1906. 34 *U. S. Stat. at L., pp.* 593, 595, § 7.

This section provides that "any common carrier, railroad or transportation company receiving property for transportation

from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed."

The defendant claims that this clause of the Interstate Commerce act does not impose a liability upon the initial carrier, unless such initial carrier shall issue a receipt or bill of lading for the property received. This contention, in substance, is, that although the defendant upon receipt of these goods for shipment failed in its duty to issue a receipt or bill of lading therefor, it by reason of such failure escaped the liability which would have rested upon it had it performed its statutory duty.

With this construction of the twentieth section of the act, I am unable to agree. The words "lawful holder" in the clause which provides that a common carrier shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, &c., were used to include not only the shipper, but any assignee of the bill of lading; and where no bill of lading is given, the shipper himself stands in the same position as if he was the lawful holder of such bill of lading, and the liability of the company to such shipper is the same liability as is imposed in favor of the lawful holder of a receipt or bill of lading.

So we think that, under the federal statute, the shipper was entitled to bring this action against the defendant.

Respecting the refusal of the court to grant a continuance of the trial because of the absence of some records which the counsel for the defendant wished further time to obtain, we think the judicial action was clearly within the discretion of the court.

We think there was no error of which the appellant can avail itself, and that the judgment should be affirmed.