**DELAWARE, L. & W. R. CO.**
v.
**UNITED STATES.**

United States District Court,
S. D. New York.
April 21, 1954.

Rowland L. Davis, Jr., New York City, by John F. Reilly, Washington, D. C., for plaintiff.

J. Edward Lumbard, New York City, by Harold R. Tyler, Jr., New York City, for defendant.

BONDY, District Judge.

This is an action brought by the Delaware, Lackawanna & Western Railroad Company for the balance of freight charges owed by the defendant for the transportation of shipments of canned food.

The charges for the shipments amounted to $9,476.84, of which the defendant paid $5,229.93, leaving a balance of $4,246.91, which is the amount demanded by the plaintiff in this action.

The United States in a counterclaim asserts that it is entitled to deduct from the freight charges the loss it sustained as a result of damage to the shipment of machinery owned by it and delivered by the plaintiff to Ithaca Gun Company, the consignee thereof.

The damage, arising out of that shipment of machinery, asserted in the counterclaim amounts to $6089.03 and the defendant therefore asks for affirmative judgment for the sum of $1,842.12.

The machinery was shipped under a uniform domestic straight railroad bill of lading on a printed form of the consignor, The Union Switch and Signal Company. It was delivered to the Pennsylvania Railroad Company at Swissvale, Pa., on September 9, 1944, and delivered to the consignee, Ithaca Gun Company plant at Ithaca on September 15, 1944, in a damaged condition. It was routed Pennsylvania R.R.–Elmira–D.L. & W.

On October 24, 1944 the plaintiff received a letter from the Ithaca Gun Company, dated October 23, 1944, specifying the damage to the machinery.

On October 12, 1945 plaintiff received a letter dated September 28, 1945 from Headquarters of the Army Service Forces, setting forth the details of "a claim of the United States against your firm". A letter dated June, 1946 notified the defendant that the defendant's claim for damages had been received and that since the shipment was delivered on September 15, 1944 and since the claim was not filed until September 28, 1945, approximately one year later, the claim has become outlawed.

■ The United States, although the owner of the machinery, was not named in the bill of lading which contained the following clause: "2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, * * * within nine months after delivery of the property, * * * Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

This time limitation is reasonable and valid. 49 U.S.C.A. § 20(11).

Plaintiff opposes the counterclaim on three grounds: First, that the defendant has no standing to sue under the railroad company's uniform straight bill of lading, to which the defendant is not a party; Second, that the defendant is bound by the terms and conditions set forth in Clause 2(b) of the bill of lading; and Third, that the letter of October 23, 1944 from the Ithaca Gun Company to Lackawanna did not constitute a claim in writing within the meaning of the contract.

Section 20(11) Title 49 U.S.C.A. defines the liability of the delivering carrier, stating that any common carrier, railroad or transportation company delivering property received by it and transported shall be liable to the lawful owner of the receipt or bill of lading or

to any party entitled to recovery thereon, whether such receipt or bill of lading has been issued or not.

■ The stipulated facts do not state whether the United States is the present holder of the bill of lading. The fact that it has been conceded that the United States is the owner of the machinery gives it the right to bring the suit to recover the damages without proof of actual possession of the bill of lading. In Valco Mfg. Co. v. C. Rickard & Sons, 22 N.J.Super. 578, 92 A.2d 501, 504, the court considering said clause 2(b) and Section 20(11), Title 49 U.S.C.A., stated: "Thus appellant's right to sue on the contract of carriage does not depend upon its position as a party thereto. If it is a lawful holder thereof or entitled to recover thereon the action may be maintained.

"It is not clear from the record who now holds the bills of lading. If appellant has possession the presumption exists that it is the lawful holder within the statute * * * and so entitled to bring the action. Moreover, 'lawful holder' comprehends the owner of the property to be transported or the one beneficial entitled to recover for the loss or injury, and manual possession of the bill of lading is not a prerequisite to the right to sue."

Thus it having been conceded that the United States was the owner of the machinery, it may sue for damage thereto even though it was not named in the bill of lading. Cf. Chicago, Milwaukee, St. P. & P. Ry. Co. v. Acme Fast Freight, Inc., 336 U.S. 465, 487, 488, footnote 27, 69 S.Ct. 692, 93 L.Ed. 817; Atchison, Topeka & Santa Fe Ry. Co. v. United States, D.C., 94 F.Supp. 677, 679, 118 Ct.Cl. 194; Restatement of Agency, Secs. 302 and 310.

The United States relying on Missouri-Kansas-Texas R. Co. of Texas v. U. S., 62 Ct.Cl. 373, certiorari denied 273 U.S. 725, 47 S.Ct. 236, 71 L.Ed. 860; American Ry. Express Co. v. U. S., 62 Ct.Cl. 615, 637 urges that it is not bound by the provision of 2(b) of the bill of lading since the United States is not bound by Statutes of Limitation, otherwise than by express provision and is not barred by laches of its agent. U. S. v. American Bell Telephone Co., 159 U.S. 548, 554, 16 S.Ct. 69, 40 L.Ed. 255; U. S. v. Seaboard Air Line Ry. Co., 4 Cir., 22 F.2d 113, 115.

■ The plaintiff asserts that the provisions of clause 2(b) of the bill of lading are contractual in nature and that the Government therefore is bound by such limitations. Seaboard Air Line Ry. Co. v. U. S., supra, and U. S. v. Chicago, R. I. & P. R. Co., 5 Cir., 200 F.2d 263, 264. In the Seaboard case it is stated that a clause similar to clause 2(b) is not a statutory limitation but contractual and that the Government would be bound by the time limitation specified therein. The attempt by the defendant to distinguish that case because the shipment there in question was Intra-State and because that case was decided before the Transportation Act of 1920, 41 Stat. 456, cannot be sustained in view of the recent affirmation of the principle of the Seaboard case in U. S. v. Chicago, R. I. & P. R. Co., supra. The court in that recent case considering similar facts in an Interstate shipment held that the Commodity Credit Corp. was bound by the identical clause 2(b), and quoted with approval the Seaboard case. The holding in U. S. v. Chicago, R. I. & P. R. Co. is not restricted to a government corporation: "The real question * * * is whether the Government is bound by the limitations in the contract of shipments into which it has entered with the railroad company."

The Court of Claims cases, American Ry. Express Co. v. U. S., supra, and Missouri-Kansas-Texas R. Co. of Texas v. U. S., supra, upon which the Government relies, were held not to be decisive of the questions involved in the Seaboard case, 22 F.2d at page 116.

■ An agent who has power to enter into a contract for shipment has authority to bind the United States to the usual terms of such contract. See Seaboard Air Line Ry. Co. v. U. S., supra, and U. S. v. Chicago, R. I. & P. R. Co., supra.

Section 66 of Title 49 U.S.C.A. applies only to the recovery of over-payments to carriers and not to liability for damage to shipment, asserted against the carrier.

The remaining defense to the counterclaim presents some difficulty. It raises the question whether the letter of October 23, 1944 constitutes a notice of claim as required by Section 2(b) of the bill of lading. In Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 198, 36 S.Ct. 541, 545, 60 L.Ed. 948, the Supreme Court stated that the object of a clause of this type in a bill of lading is "to secure reasonable notice", that compliance with this provision "does not require documents in a particular form" and that the clause should "be construed in a practical way." The purpose of the notice is to give the carrier an opportunity to investigate the claim. Delphi Frosted Foods Corp. v. Illinois Cent. Ry. Co., 6 Cir., 188 F.2d 343, 345, certiorari denied 342 U.S. 833, 72 S.Ct. 53, 96 L.Ed. 630.

In Insurance Co. of North America v. Newtowne Mfg. Co., 1 Cir., 187 F.2d 675, 681, the court stated that "* * * the requirement of a claim 'in writing' * * * at the minimum, we think, must be a written document, however informal in expression, indicating an intention * * * to claim reimbursement from the carrier for a loss asserted to have occurred in the past, and sufficiently identifying the shipment in question either on the face of the document or by reference to previous correspondence between the parties." In Northern Pac. Ry. Co. v. Mackie, 9 Cir., 195 F.2d 641, 643, the court referring to the Newtowne case stated: "The court thought that the minimum requirement is a written document, however informal, indicating the intent to claim, with sufficient identification of the shipment." But the court decided that the notice was insufficient in the absence of any writing within the required time.

In the Newtowne case, supra, 187 F.2d at page 681, the court in passing upon the sufficiency of a notice of claim considered whether the writings showed "on their face the happening of any loss which might be the subject of a claim." In Minot Beverage Co. v. Minneapolis & St. L. Ry. Co., D.C., 65 F.Supp. 293, 296 the court stated: "All that is required, in view of its [clause 2(b)] object, is a statement in practical and clear language which gives defendant sufficient information upon which a prompt and complete investigation can be based."

The written notice which is to be considered in a "practical way" is sufficient if a carrier cannot draw any inference from it other than that a claim for damages was contemplated, even if the writing does not contain a formal demand for damages. See Benson v. Davis, 156 Minn. 354, 194 N.W. 771; Fiske Rubber Co. of New York v. New York, N. H. & H. R. R., 240 Mass. 40, 132 N.E. 714, 715; Payne v. Smith, Tex.Civ. App., 268 S.W. 243.

The letter dated October 24, 1944 of the Ithaca Gun Co., Inc., the consignee, sent to the plaintiff, enclosed a list of the claimed damages and stated it was given at the plaintiff's request. It accordingly indicated that a claim is being made or will be made. The plaintiff could not have inferred that the letter was written for any purpose other than to give notice that a claim would be made.

It also appears that the machinery was sent by the United States to the consignee only for use by the consignee under a war contract and accordingly constituted the Ithaca Gun Company a bailee or agent for the United States. See Beltrami Co-op Creamery Ass'n v. American Ry. Express Co., 160 Minn. 221, 199 N.W. 568 in which the court stated that "The purpose is to give notice of the claim and of the transaction out of which it arises so that the carrier may make its investigation. If that purpose is accomplished, the notice is sufficient, even though it is given by the consignee, and the consignor is the real party in interest."

In Hopper Paper Co. v. Baltimore & O. Ry. Co., 7 Cir., 178 F.2d 179, certiorari denied 339 U.S. 943, 70 S.Ct. 797,

94 L.Ed. 1359, the court adopted, in the absence of written claims, an even more liberal construction of the requirements of clause 2(b), which construction, however, has been seriously questioned in later cases. See e. g. Delphi Frosted Foods Corp. v. Illinois Cent. Ry. Co., supra; Northern Pac. Ry. Co. v. Mackie, supra; Pacific Service Elec. & Gas Co. v. Reading Co., 17 N.J.Super. 148, 85 A.2d 548, 549.

The court accordingly concludes that the defendant has the right to sue on the bill of lading for the damage to the machinery shipped to Ithaca Gun Co., notwithstanding that it is bound by clause 2(b) of the bill of lading, and that the letter of October 23, 1944 from the Ithaca corporation to Lackawanna was sufficient notice in writing of the defendant's claim within nine months of the receipt of the damaged shipment. The defendant therefore is entitled to a judgment in the sum of $1,842.12, being the difference between the amount claimed by it and the amount owing to plaintiff for the balance of its freight charges.